UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


BRIAN BARTRAM,                    :    CIVIL ACTION NO.
        PLAINTIFF,                :       3:02CV2148(SRU)
                                  :
V.                                :
                                  :
TOWN OF WEST HARTFORD, ET AL
        DEFENDANTS                :    December 6, 2004


## JOINT TRIAL MEMORANDUM

### 1.    PLAINTIFF'S TRIAL COUNSEL
Norman A. Pattis
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931

Erin I. O'Neil
818 Farmington Avenue
West Hartford, CT 06119
(860) 523-4055
erinoneilbaker@hotmail.com

### DEFENDANTS' TRIAL COUNSEL

Scott M. Karsten
Sack, Spector & Karsten
836 Farmington Avenue
West Hartford, CT 06119
(860)233-8251

### 2.    JURISDICTION

This court has jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1343(3)

and 1367(a) and 42 U.S.C. §§ 1983 and 1988.

### *3. JURY/NON-JURY*

This is a jury case.

### 4.    LENGTH OF TRIAL

The  parties estimate three to five days of evidence.

### 5.    FURTHER PROCEEDINGS

The plaintiff does not foresee the necessity of any further proceedings before the court prior to trial.  Defendants anticipate argument regarding their motions to preclude testimony of undisclosed experts and to preclude other witnesses whose testimony would be irrelevant *ab initio*.

### 6.    NATURE OF CASE

Plaintiff's claims against the three remaining defendants arise under the Fourth Amendment and the state common law analog for false imprisonment. Defendants deny violation of said rights and assert qualified immunity.

### 7.    STATEMENT OF THE CASE

On April 17, 2002, plaintiff Brian Bartram was a public Safety Dispatcher for the Town of West Hartford's Police Department.  Defendants Garewski, Lasata and Estes were, respectively, a Captain, Lieutenant and Sergeant in the Department, and were at all relevant times on duty on that date.  Following a series of conversations among these parties and other employees of the Department, plaintiff Bartram was transported to Dempsey Hospital for an emergency psychiatric evaluation.  Plaintiff was examined at the hospital and thereafter released for followup.

Plaintiff contends that there did not exist reasonable cause for him to be required to undergo this evaluation.  Defendants contend that reasonable cause at least arguably did exist to require that evaluation.  Plaintiff claims his Fourth Amendment and state law rights to be free from an unlawful seizure were violated.  Defendants deny any such violation, and in addition assert that they are entitled to qualified immunity for their discretionary actions.

8.    **TRIAL BY MAGISTRATE JUDGE**

The parties have not agreed to a trial by magistrate judge.

9.    **LIST OF WITNESSES**

**PLAINTIFF'S LIST OF WITNESSES**

Heather Bartram is expected to testify as to her employment as a dispatcher at the West Hartford Police Department and as the wife of the plaintiff.
120 Undermountain Rd.
Salisbury, CT 06068-0496

Jeffrey Garewski is expected to testify as to his participation in the events leading up the plaintiff's involuntary hospitalization.
103 Raymond Rd
West Hartford, CT 06107

Stephen Estes is expected to testify as to his participation in the events leading up the plaintiff's involuntary hospitalization.
103 Raymond Rd
West Hartford, CT 06107

Sonja Vigue is expected to testify as to her employment as a dispatcher at the West Hartford Police Department and will testify concerning the actions of all defendants.
86 Bald Hill Rd
Tolland CT

Carol Thibedeau is expected to testify as to her employment as a dispatcher at the West Hartford Police Department and will testify concerning the actions of all defendants.
669 North Street

Suffield, CT 06078

Susan MacDonald is expected to testify as to her employment as a dispatcher at the West Hartford Police Department and will testify concerning the actions of all defendants.
24 Westwood Circle
Meriden, CT

Assistant Chief Carl Rosensweig is expected to testify as to his participation in the events leading up the plaintiff's involuntary hospitalization.
103 Raymond Rd
West Hartford, CT 06107

Joseph LaSata is expected to testify as to his participation in the events leading up the plaintiff's involuntary hospitalization.
103 Raymond Rd
West Hartford, CT 06107

Dr. Gary Crakes is expected to testify in his expert opinion regarding the economic damages of the plaintiff.
Maher, Crakes & Associates
860 Ward Lane
Cheshire, CT 06410

Dr. Mark Versland is expected to testify as to his treatment of the plaintiff.
40 Hart Street Bldg D
New Britain, CT 06052

Dr. Schiffer M.D. is expected to testify as to his treatment of the plaintiff and the EAP Pathways program.
Pathways EAP
674 Prospect Avenue
Hartford, CT 06105

Phillip J. Mays M.S. LMFT, is expected to testify as to his treatment of the plaintiff.
Psychotherapy Assoc.
5 Staunton Court
Farmington, CT 06030

UCONN – E.R. Triage Nurse is expected to testify as to the plaintiff's treatment.

UCONN – E.R. Doctor is expected to testify as to the plaintiff's treatment.

UCONN – E.R. Psych Team is expected to testify as to the plaintiff's treatment.

Officer Michael Perrucio will testify concerning the actions of all defendants.
103 Raymond Rd
West Hartford, CT 06107

Sharon Williams  is expected to testify as to her employment as a dispatcher at the West Hartford Police Department and will testify concerning the actions of all defendants.

Officer Larry Labbe – West Hartford P.D. will testify concerning the actions of all defendants.
103 Raymond Rd
West Hartford, CT 06107

Officer Marie Colangelo – West Hartford P.D. will testify concerning the actions of all defendants.
103 Raymond Rd
West Hartford, CT 06107

Iris Goldfarb is expected to testify as to her employment as a dispatcher at the West Hartford Police Department and will testify concerning the actions of all defendants.
34 Woods Run
Farmington, CT 06032

Patricia Morowski – West Hartford Town Hall - Human Resources is expected to testify as to the plaintiff's treatment.

George Gould – Union Representative is expected to testify as to the plaintiff's collective bargaining agreement rules and procedures.

American Medical Response – EMT'S are expected to testify as to the plaintiff's treatment and their transportation of the plaintiff to the UConn Medical Center.

Lt. Anthony Miele – West Hartford P.D. will testify concerning the actions of all defendants.
103 Raymond Rd
West Hartford, CT 06107

**DEFENDANTS' WITNESSES**

**A.     Expected to testify.**

1.     Defendant Jeffrey Garewski, West Hartford Police Department, is expected to testify concerning his and other witnesses' observations of the plaintiff, his responses to those observations, and his actions in response thereto.

2.     Defendant Joseph LaSata, West Hartford Police Department, is expected to testify concerning his and other witnesses' observations of the plaintiff, his responses to those observations, and his actions in response thereto.

3.     Defendant Steven Estes, West Hartford Police Department, is expected to testify concerning his and other witnesses' observations of the plaintiff, his responses to those observations, and his actions in response thereto.

4.     Sonja Vigue, West Hartford Police Department, is expected to testify concerning her and others' observations of plaintiff, her responses to those observations, and her actions in response thereto.

5.     Sharon Williams, West Hartford Police Department, is expected to testify concerning her and others' observations of plaintiff, her responses to those observations, and her actions in response thereto.

6.     UCONN E.R. Psychology Evaluation doctor(s) is/are expected to testify concerning their observations of plaintiff on April 17, 2002, their report and their recommendations for treatment.

7.     American Medical Response EMTs are expected to testify concerning their observations of and interactions with plaintiff.

8.     Marie Colangelo, West Hartford Police Department, is expected to testify concerning her observations of plaintiff.

**B.     May testify if the need arises.**

1.     Chief James Strillacci, West Hartford Police Department, may testify as to the events of April 17, 2002 and, the actions and motivations of the defendants, and events prior and subsequent to April 17, 2002.

2.     Assistant Chief Carl Rosensweig, West Hartford Police Department, may testify as to the events of April 17, 2002 and, the actions and motivations of the defendants, and events prior and subsequent to April 17, 2002.

3.      Brian Bartram, plaintiff, West Hartford Police Department, may testify as to the events of April 17, 2002 and, the actions and motivations of the defendants, and events prior and subsequent to April 17, 2002.

4.      Heather Bartram, wife of plaintiff, West Hartford Police Department, may testify as to the events of April 17, 2002 and, the actions and motivations of the defendants, and events prior and subsequent to April 17, 2002.

5.      Susan McDonald, West Hartford Police Department, may testify as to the events of April 17, 2002 and, the actions and motivations of the defendants, and events prior and subsequent to April 17, 2002.

6.      Todd Hungerford, West Hartford Police Department, may testify as to the events of April 17, 2002 and, the actions and motivations of the defendants, and events prior and subsequent to April 17, 2002.

7.      Patricia Morowsky, Town of West Hartford, may testify regarding actions, statements and behaviors by plaintiff after April 17, 2002.

8.      Anthony Miele, West Hartford Police Department, may testify regarding actions, statements and behaviors by plaintiff after April 17, 2002.

9.      Greg Gardner, Colebrook, Connecticut, may testify concerning conversations with plaintiff and Heather Bartram and actions taken by him on April 17, 2002.

10.    **DEPOSITION TESTIMONY**

The parties do not intend to have any witness testify by deposition.

11.    **EXHIBITS**

**PLAINTIFF'S EXHIBITS**

1.  Affidavit of Jeffrey Garewski – May 24, 2004

2. Affidavit of Joseph Lasata – May 21, 2004

3. Affidavit of Stephen B. Estes – May 20, 2004

4. Affidavit of Carl Rosensweig – May 24, 2004

5. Affidavit of James Strillacci – May 24, 2004

6. Affidavit of Sonja Vigue – May 20, 2004

7. Deposition of Brian Bartram – May 1, 2003

8. Medical Release Authorization – UCHS Ambulatory Services – 8-23-2002

9 Search and Seizure Warrant – 4-17-2002

10. Medical leave of absence request letter – May 6, 2002

11. Resignation letter – Jan 22, 2003

12. Police Emergency Examination Request – 4-17-2002

13. Incident Report – 4-17-2002

14. Letter to Honorable Lester J . Forst from Clarine Nardi Riddle, Acting Attorney General

15.    Garewski's Notes

**16.**    Treatment notes of Dr. Mark Versland, Dr. Schiffer M.D

**17.**    Economic damages report of Dr. Gary Crakes

**DEFENDANTS' EXHIBITS**

**A.    Expected to Be offered.**

1.    Police reports and related documents.

2.    UConn Hospital records and reports concerning plaintiff.

3.    Medical LOA request by plaintiff, May 6, 2002.

4.    Resignation Letter from plaintiff, January 22, 2003.

5.    West Hartford Police Department Professional Reference Directory, § 3.1.

**B.    May be offered.**

1.    Request for job reference by plaintiff.

2.    Correspondence from plaintiff to Town of West Hartford officials subsequent to April 17, 2002.

3.    Affidavit(s) of Brian Bartram.

4.    Affidavits(s) of Heather Bartram.

5.    Deposition transcript(s) of Brian Bartram.

6.    Deposition transcript of Iris Goldfarb.

7.    Contemporaneous notes of defendant Garewski.

12.    **EVIDENTIARY PROBLEMS**

The plaintiff does not anticipate any evidentiary problems.  Defendants anticipate problems with plaintiff's proposed offer of testimony from expert witnesses (none of which has been disclosed) and as to claims for damages other than any related specifically to plaintiff's referral for a psychiatric evaluation. Defendants also object to plaintiff's proposed interrogatories/verdict form, on the ground that it includes issues not present in the case.

13.    **STIPULATIONS OF FACT AND LAW**

*(a)    Legal Issues*

1.    Was the plaintiff involuntarily ordered to be examined without reasonable cause?

2.    Is any defendant entitled to the benefit of the affirmative defense of qualified immunity?

3.    What if any compensable damages did plaintiff incur.

*(b)    Stipulations of Fact*

1.    At all relevant times, plaintiff Brian D. Bartram was a duly appointed Public Safety Dispatcher with the Town of West Hartford Police Department.

2.      At all relevant times, Strillacci was the Chief of Police of the West Hartford Police Department.

3.      At all relevant times, Carl Rosensweig was an Assistant Chief of Police at the West Hartford Police Department.

4.      At all times relevant, defendant Jeffrey Garewski was a Captain with the West Hartford Police Department.

5.      At all relevant times, defendant Joseph Lasata was a Lieutenant with the West Hartford Police Department.

6.      At all relevant times, defendant Stephen Estes was a Sergeant with the West Hartford Police Department.

7.      At all times relevant Heather Bartram was the plaintiff's wife, and was employed as a Public Safety Dispatcher with the West Hartford Police Department. Exhibit G, Deposition Transcript of Brian Bartram, pp. 8:18-19; 70:4- 8.      At all relevant times, Sonja Vigue was employed as a Public Safety Dispatcher with the West Hartford Police Department.  Exhibit F, Affidavit of Sonja Vigue, ¶ 3.

14.    **TRIAL TO JURY**
       **(a) Proposed Voir Dire Questions**

       See  Proposed Voir Dire Questions Attached.

       **(b) Proposed Jury Instructions**

       See  Proposed Instructions Attached.

**(c) Jury Interrogatories/Proposed Verdict Form**

See  Proposed Interrogatories Attached.

## PLAINTIFF'S PROPOSED INTERROGATORIES/VERDICT FORM

1.  Did defendant Garewski involuntarily hospitalize the plaintiff?
           Yes_____                No_____
2.  Did defendant Estes involuntarily hospitalize the plaintiff?
           Yes_____                No_____
3.  Did defendant Lasata involuntarily hospitalize the plaintiff?
           Yes_____                No_____

4.  If you have answered "yes" to any of the foregoing questions, what amount of money do you award the plaintiff to compensate him for his false arrest?
           $_____

5.  If you answered "yes" to Question 1, what amount of punitive damages, if any, should defendant Garewski pay to the plaintiff for falsely arresting him?
           $_____
6.  If you answered "yes" to Question 2, what amount of punitive damages, if any, should defendant Estes pay to the plaintiff for falsely arresting him?
           $_____
7.  If you answered "yes" to Question 3, what amount of punitive damages, if any, should defendant Lasata pay to the plaintiff for falsely arresting him?
           $_____

## PLAINTIFF' S REQUESTS FOR VOIR DIRE

1.  This is a lawsuit for civil rights violations brought by citizens against

police officers.  Is there any reason why you would have difficulty being completely

neutral and fair in deciding this case if you are chosen to serve on the jury?

2.  Is there anyone here who would prefer not to sit on a jury concerning a

case of this kind?

3.  Does anyone here feel for any reason that citizens who believe that they

have been treated illegally and unfairly should not bring suit against police officers?

If so, please explain.

4.  Have you or anyone close to you ever been employed as a policeman or by any law enforcement agency in any capacity?  If so, please explain.

5.  Have you or anyone close to you ever been employed by any municipality in the State of Connecticut?

6.  Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.  Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8.  Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.  Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.  Has anyone here or any close to you ever been employed by an attorney?

11.  Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.  Other things being equal, would you tend to trust or believe the testimony of a police officer more or less than that of an ordinary citizen merely because the testimony came from a police officer?

13.  Does anyone here have any feeling that the testimony of a police officer is entitled to greater or lesser weight or believability than that of a civilian?

14.  Have you or anyone close to you ever been the victim of a crime?

15.   Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.   Have you or anyone close to you ever been arrested?

17.   Has anyone here ever witnessed an arrest?

18.   Have you, or has anyone close to you, ever been a party to a lawsuit?  If so, please explain.

19.   Where are you employed?

20.   If you are married, is your spouse connected in any way with any police department or other law enforcement agency or is he or she employed by any municipality?

**PLAINTIFF' S REQUESTS FOR JURY INSTRUCTIONS**

1.   The plaintiff has brought this lawsuit to obtain redress for what they contend were violations of his rights under the United States Constitution, specifically their right to be free from false arrest.  Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his constitutional rights.  "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, police officers.  In this case, the parties have stipulated that the defendants were acting under color of law, so you need not concern yourselves with that issue.  [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

- 13 -

2.  It is not necessary to find that the defendants had any specific intent to deprive the plaintiff of his civil rights in order to find in favor of the plaintiff.  The plaintiff wins this case if the defendants intended the actions which resulted in the violation of the plaintiffs' rights or if the defendants acted in reckless disregard of the plaintiffs' rights.  Reckless disregard of the plaintiffs' rights simply means not caring whether or not those rights were being violated.  [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

3.  The testimony of a police officer is entitled to no special or exclusive sanctity.  An officer who takes the witness stand subjects his or her testimony to the same examination and the same tests that any other witness does and in the case of police officers you should not believe them merely because they are so employed.  You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, and weigh and balance it just as carefully as you would the testimony of any other witness.  People employed by the government, including police officers, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight. [Wright & Havanich, CONN. JURY INSTRUCTIONS, (2d Ed.) §667.]

4.  If you find that the defendants are liable to the plaintiff on any of the grounds advanced in this lawsuit, you should then consider the question of

- 14 -

damages.  There are essentially two kinds of damages which can be awarded in a

lawsuit -- compensatory damages and punitive damages.  Compensatory damages

are designed to compensate the plaintiff for injuries suffered by the plaintiff.  These

injuries include money actually spent or debts incurred as a result of the injury, as

well as emotional anguish, impairment of reputation, personal humiliation, and other

suffering.  In fixing compensatory damages you should determine the amount of

money which will, in your judgment, reasonably and fairly compensate the plaintiff

for any harm of any kind which was proximately caused by the wrongful conduct of

the defendants.  Among the elements of injury and harm for which compensation

may be awarded are:

 a)  The physical harm to the plaintiff during and after the impairment or injury

received, including imprisonment and loss of freedom;

 b)  The emotional harm to the plaintiff during and after the impairment or

injury received, including emotional distress or pain, humiliation, personal indignity,

embarrassment, fear, anxiety and/or anguish which the plaintiff has suffered or may

with reasonable certainty be expected to suffer in the future;

 c)  Lost wages or earnings;

 d)  Attorney fees or other expenses and costs of legal representation;

 e)  Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred.  Injuries of any kind are to

be fully and fairly compensated if they are proximately caused by the constitutional

violation.  You should award damages in such a case to the extent that the loss or

injury can be reasonably quantifiable and not simply on the basis of the inherent

value of the rights violated.  The damages you award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you.  [Memphis Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

5.  You may also decide whether the plaintiff is entitled to the award of any punitive damages.  In a case like this one, you may consider whether acts or omissions of the defendants, or any of them, if you find them to have been proved, were so serious that the defendant or defendants should pay a penalty so that in the future others will be deterred from engaging in the same conduct.  Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

1)  Willful or malicious violation of the constitutional rights of the plaintiff;

2)  Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

3)  Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should award punitive damages.  [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of

Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

6.  The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community.  In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case.  These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case.  [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

7.  Police officers have an affirmative duty to enforce the law and preserve the peace.  This includes stopping other police officers from violating the law.  A police officer may not ignore the duty imposed by his office and fail to stop other officers who illegally arrest a third person in his presence.  Thus, if you find that any police officer, whether or not named as a defendant, violated any of the civil rights of the plaintiff, and that any defendant did nothing to prevent it, although in a position to do so, then the defendant himself or herself is liable for that unlawful act. [Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); Zapico v. Bucyrus-Erie Co., 579 F.2d

714, 718 (2d Cir. 1978); Bruner v. Dunaway, 684 F.2d 422 (6th Cir 1982); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972).]

8. Conduct of a defendant, including statements knowingly made and acts knowingly done after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the case in determining whether or not the defendant has acted wrongfully.  When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of wrongdoing.  Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.  Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.  A statement or act is "knowingly" done, it made or done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.  [Fernandez v. Fitzgerald, 711 F.2d 485 (2d Cir. 1983); United States v. McDougald, 650 F.2d 532 (4th Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States v. Barresi, 601 F.2d 193 (5th Cir. 1979); United States v. Wood, 550 F.2d 435 (9th Cir. 1976); Opper v. United States, 348 U.S. 84, 92 (1954); Wilson v. United States, 162 U.S. 613, 620-21 (1896); United States v. DeAlesandro, 361 F.2d 694, 697-98 (2d Cir. 1966), cert. denied, 385 U.S. 842 (1967).]

9.  If you find that the defendant not only made a false statement or explanation tending to show his innocence, but has made that statement to a law enforcement officer, then you may consider that to be evidence not only of the defendant's consciousness of his own wrongdoing but independent evidence that in fact he did violate the plaintiff's rights in the manner alleged in the Complaint.  False exculpatory statements made to law enforcement officials are circumstantial evidence and have independent probative force.  In other words, if you find that a defendant has knowingly made a false statement to a law enforcement officer, which if true would have tended to establish the innocence of the defendant, you may consider that false statement as independent evidence that the defendant actually committed the constitutional violation alleged in the Complaint.  [United States v. Durrani, 835 F.2d 410, 424 (2d Cir. 1987).]

10.    A police officer may not arrest a person without an arrest warrant unless he has probable cause.  In this case the plaintiff was forced to submit to a psychiatric evaluation against his will, which is protected by the Fourth Amendment. The Defendants in this case needed to have probable cause to believe that the plaintiff was mentally ill and posed a danger to himself, or others. Probable cause exists if the facts and circumstances known to the defendant, or of which he had reasonably trustworthy information, are sufficient to warrant a prudent police officer in believing that  the plaintiff was mentally ill and posed a danger to himself or others.   The hunch, guess, conjecture or surmise of an officer is not enough, and there must be enough actual evidence to lead reasonably to the conclusion that the plaintiff was mentally ill and posed a danger to himself, or others. Thus, if you find

that the defendants involuntarily hospitalized the plaintiff without probable cause,
you must find the defendant liable for a violation of the plaintiff's constitutional
rights.  [Dunaway v. New York, 442 US. 200 (1979); Brown v. Texas, 443 U.S. 47
(1979); Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338
U.S. 160, 175-76 (1949); Thamel v. Town of East Hartford, 373 F.Supp. 455
(D.Conn. 1974) (Newman, J.).]

11.  A supervisory officer may be held liable for a violation of the plaintiffs'
rights if his own conduct was a proximate cause of the violation.  A supervisory
officer subjects a person to a violation of his or her constitutional rights if he (1)
does an affirmative act, or (2) participates or acquiesces in another's affirmative act,
or (3) omits to do something which he is required to do, and that act or omission
causes the violation of which the plaintiff have complained.  Personal participation in
the immediate act which violated the plaintiff's rights is not required.  It is sufficient if
the supervisor sets in motion a series of acts by others, or knowingly refuses to
terminate a series of acts by others, which he knows or reasonably should know
would cause others to inflict the constitutional injury.  [Johnson v. Duffy, 588 F.2d
740 (9th Cir. 1978); McClelland v. Facteau, 610 F.2d 693 (10th Cir. 1979); Sims v.
Adams, 537 F.2d 829 (5th Cir. 1976).]

**b.(3).  Proposed Jury Form.**

To be provided.

DEFENDANTS, J.A. GAREWSKI,
JOSEPH LASATA and STEPHEN
B. ESTES


BY_____
Scott M. Karsten
Federal Bar No.: ct05277
Sack Spector and Karsten
836 Farmington Avenue
West Hartford, CT 06119